| | | |
|---|---|---|
| **Estado Libre Asociado de Puerto Rico**<br>**TRIBUNAL DE APELACIONES**<br>**PANEL I** | | |
| BANCO POPULAR DE PUERTO RICO<br><br>Demandante-Recurrido<br><br>v.<br><br>CONSEJO DE TITULARES DE ALBORADA EL CONDOMINIO, COMPAÑÍAS ASEGURADORAS X, Y, Z<br><br>Demandados-Peticionarios | KLCE202400009 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso núm.: BY2023CV02244 (503)<br><br>Sobre: Injunction (Entredicho Provisional, Injunction Preliminar y Permanente), Sentencia Declaratoria |

Panel integrado por su presidente, el juez Sánchez Ramos, el juez Pagán Ocasio, el juez Marrero Guerrero y la jueza Boria Vizcarrondo

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de febrero de 2024.

El Tribunal de Primera Instancia ("TPI") denegó la desestimación por las alegaciones de una demanda dirigida a que se declare como adquirente "involuntario" a una institución que adquirió una propiedad luego de haber adquirido un crédito hipotecario relacionado con un préstamo no originado por dicha institución. Según se explica en detalle a continuación, de conformidad con las alegaciones de la propia demandante, esta es una adquirente voluntaria de la propiedad, por lo cual erró el TPI al no desestimar la acción de referencia.

I.

En abril de 2023, el Banco Popular de Puerto Rico (el "Banco") presentó la acción de referencia, sobre sentencia declaratoria e interdicto (la "Demanda"), en contra del Consejo de Titulares de Alborada El Condominio (el "Condominio"). Alegó que el Condominio está sujeto al "régimen de propiedad horizontal". Aseveró que

"poseía un crédito o gravamen hipotecario ... sobre el apartamento 3021" del Condominio (la "Propiedad").

El Banco alegó que esta hipoteca, ejecutada por este, se constituyó en garantía de un pagaré hipotecario, "en su origen, a favor del extinto AAA Concordia Mortgage, Inc., eventualmente transferido" al Banco. Añadió que el pagaré "fue objeto de dos (2) modificaciones, a solicitud de los deudores hipotecarios, para atender su situación económica al momento".

El Banco explicó que, "ante el incumplimiento de los referidos deudores hipotecarios", "se vio obligado" a ejecutar judicialmente el crédito hipotecario, por lo que, el 8 de diciembre de 2021, "advino adquirente involuntario" de la Propiedad "mediante pública subasta".

El Banco sostuvo que el Condominio había asumido la postura de que el Banco no era un adquirente involuntario, por lo cual debía pagar la totalidad de las cuotas de mantenimiento acumuladas, y no solo las correspondientes a los seis meses anteriores a la adquisición de la Propiedad por el Banco.

Sin embargo, el Banco arguyó que era un adquirente involuntario porque "su interés fundamental nunca fue ser dueño" de la Propiedad, sino que la adquirió únicamente para "proteger su acreencia". Alegó que el Banco no era una "compañía cuyo negocio sea la compra deliberada de créditos hipotecarios". El Banco solicitó al TPI que declarase que este es un adquirente involuntario de la Propiedad.

El 18 de mayo de 2023, el TPI emitió una Sentencia mediante la cual desestimó la Demanda por las alegaciones (la "Sentencia"). El TPI razonó que el Banco había adquirido la Propiedad "en la segunda subasta", por lo cual debía considerársele como un adquirente voluntario.

El Banco solicitó la reconsideración de la Sentencia. Arguyó que, a los fines de determinar si alguien es un adquirente involuntario, no tiene pertinencia si se adquirió en la primera, la segunda o la tercera subasta.

Mediante una Resolución notificada el 17 de octubre (el "Dictamen"), el TPI dejó sin efecto la Sentencia. Concluyó, sin abundar al respecto, que "existen posibilidades reales de que [el Banco] sea adquirente involuntario".

El 30 de octubre, el Condominio solicitó la reconsideración del Dictamen. Planteó que el Banco no le había notificado la moción de reconsideración, por lo cual el TPI no debió adjudicarla. En los méritos, resaltó que el Banco había admitido que adquirió el crédito hipotecario de quien "prestó el dinero para la compra" de la Propiedad (AAA Concordia Mortgage, Inc., o el "Prestamista"), por lo cual no había sido el Banco quien "facilitó la adquisición" de la Propiedad. Arguyó que el Banco adquirió el crédito hipotecario "mediante una transacción económica para su conveniencia en el campo de los negocios".

El Banco se opuso a la referida moción. Insistió en que era un adquirente involuntario de la Propiedad porque advino titular de la misma "como parte de un proceso de ejecución de hipoteca, estrictamente para proteger su acreencia". Sostuvo que, aunque no había notificado su moción de reconsideración de la Sentencia al Condominio, ello no impedía que el TPI la adjudicara, pues al momento de presentarla, el Condominio no había comparecido ante el TPI.

Mediante una Resolución notificada el 7 de diciembre, el TPI denegó la moción de reconsideración del Condominio.

Inconforme, el 3 de enero, el Condominio presentó el recurso que nos ocupa. Insiste en que el TPI no tenía jurisdicción para dejar sin efecto la Sentencia y, además, arguye que, en los méritos, por

tratarse el Banco de un adquirente voluntario, el TPI debió denegar la moción de reconsideración del Banco y, así, reiterarse en que procedía la desestimación por las alegaciones de la Demanda.

Mediante una Resolución de 11 de enero, le ordenamos al Banco mostrar causa por la cual no debíamos expedir el auto solicitado y revocar el Dictamen.

El Banco compareció; reprodujo lo planteado ante el TPI en su moción de reconsideración de la Sentencia y en su oposición a la moción de reconsideración del Dictamen, presentada por el Condominio. Resolvemos.

II.

Concluimos que el TPI erró cuando, a raíz de la moción de reconsideración de la Sentencia, no se reiteró en que procedía la desestimación de la Demanda[1]. Veamos.

El Banco es un adquirente voluntario de la Propiedad porque, al igual que ocurrió en *Con. Tit. Centro Int'l Torre II v. PRCI*, 210 DPR 403, 420 (2022), el Banco "adquirió el crédito como parte de un negocio". Es decir, la adquisición del crédito hipotecario por el Banco "fue el resultado de su criterio en el curso usual de sus negocios". *Íd.* El Banco "no fue quien otorgó el préstamo hipotecario con los deudores, sino que [lo adquirió] como parte de una transacción comercial". *Íd.*

Adviértase que, según lo alegado por el propio Banco, este adquirió el crédito hipotecario de la Propiedad como parte de la operación de sus negocios. El Banco no planteó que el crédito hipotecario lo hubiese adquirido "sin querer" o que alguien le hubiese obligado a adquirirlo. No lo ha planteado porque no

---

[1] Contrario a lo planteado por el Condominio, el TPI sí tenía jurisdicción para adjudicar esta moción de reconsideración. Aunque la misma no fue notificada al Condominio, no está claro si el Banco tenía la obligación de hacerlo en la entonces coyuntura procesal del caso. No obstante, no tenemos que resolver este asunto, pues la incertidumbre jurídica al respecto era, cuando menos, razonable, por lo cual, aun de haber existido dicha obligación (sin resolverlo), se habría configurado la justa causa que excusaría la falta de notificación.

conocemos, ni el Banco ha señalado que exista, forma alguna en que una institución bancaria privada pueda, por "accidente" o de forma involuntaria, adquirir un crédito hipotecario. Como cuestión de derecho, siempre es necesario, para que el Banco adquiera un crédito hipotecario, que este haya prestado su consentimiento.

En cambio, el adquirente involuntario que contempla la doctrina vigente es quien "facilitó la adquisición" de la Propiedad en un momento en "que, como regla general, la deuda por las cuotas de mantenimiento no existía... ." *Condominio First Federal v. LSREF2*, 202 DPR 934, 946-947 (2019). Es decir, la figura del "adquirente involuntario" surgió para proteger a la "institución financiera que viabiliza la compra" de una propiedad. *LSREF2*, 202 DPR a la pág. 949.

La "sola compra de un crédito hipotecario (indistintamente del momento en que se adquiera)" no convierte en "adquirente involuntario a una compañía que adquirió por '**un acto volitivo dictado por su propia conveniencia en el campo de los negocios**'". *LSREF2*, 202 DPR a la pág. 947 (énfasis en original) (citas omitidas). Así pues, en este caso, al adquirir el crédito hipotecario de la Propiedad, el Banco "se montó deliberadamente en ese tren y como adquirente voluntario tiene la obligación de responderle al Condominio por las cuotas de mantenimiento impagadas". *LSREF2*, 202 DPR a la pág. 949.

Contrario a lo planteado por el Banco, no tiene pertinencia jurídica el que, supuestamente, el Banco no sea una "compañía cuyo negocio [sea] la compra de créditos hipotecarios". Lo pertinente es que, en este caso, el Banco adquirió el crédito hipotecario como resultado de una decisión voluntaria de negocios. Nada en la jurisprudencia citada, interpretativa del lenguaje estatutario

pertinente[2], sugiere que quien adquiere un crédito hipotecario, relacionado con un préstamo otorgado por un tercero, de algún modo se convierte en adquirente "involuntario" únicamente porque este tipo de transacción no constituya su único (o su principal) negocio.

Por otra parte, este tipo de distinción entre compañías que compran créditos hipotecarios en el mercado secundario no tendría base coherente alguna. Ello porque no hay razón para aplicar una norma distinta dependiendo del volumen o proporción de este tipo de transacción en las operaciones comerciales de las compañías involucradas. Más aún, el estándar sugerido por el Banco[3] sería de bien difícil, por no decir imposible, de administrar.

Así pues, como el Banco es un adquirente voluntario de la Propiedad bajo los términos del Artículo 60 de la Ley 129-2020, 31 LPRA sec. 1923e, le responde al Condominio por la totalidad de las cuotas de mantenimiento de la Propiedad. Por tal razón, el TPI debió haber desestimado la Demanda a raíz de la moción de reconsideración del Dictamen.

III.

Por los fundamentos que anteceden, se expide el auto de *certiorari,* se revoca la *Resolución* recurrida y se ordena la desestimación de la demanda de referencia.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[2] El lenguaje estatutario interpretado en *LSREF2, supra*, es, en lo pertinente, indistinguible del lenguaje estatutorio actualmente aplicable. Compárese Artículo 2 de la Ley 119-2016 (enmendando la Ley Núm. 21 de 20 de mayo de 1987), citado en *LSREF2, supra*, 202 DPR a la pág. 934 n.31; con el Artículo 3(b) de la Ley 129-2020, 31 LPRA sec. 1921b(b).

[3] El Banco no especifica exactamente cómo podríamos distinguir entre "compañía[s] cuyo negocio es la compra de créditos hipotecarios" y compañías cuyo negocio, supuestamente, no es ese, pero quienes, de todas maneras, como hizo el Banco aquí, adquieren dichos créditos como parte de la operación de sus negocios.